

FILED
CLERK U.S. DISTRICT COURT

OCT - 7 2015

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NOAH U., an individual,

       Plaintiff,

       v.

TRIBUNE COMPANY MEDICAL PLAN
and BLUE CROSS BLUE SHIELD OF
ILLINOIS,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 2:14-CV-03062-SVW-AJW

ORDER DETERMINING THE
STANDARD OF REVIEW AND
DENYING PLAINTIFF'S MOTION TO
STRIKE TRIBUNE'S 2012 PLAN [53]

## I.    INTRODUCTION

Plaintiff Noah U.[1] brought this case against his insurer, defendant Tribune Company Medical Plan ("the Plan"), after his insurance claim for treatment of his eating disorder was denied. The Court is presently called upon to decide the applicable standard of review. Also before the Court is Plaintiff's motion to strike the 2012 Plan document pursuant to Federal Rule of Civil Procedure 37. (Dkt. 53.) For the reasons discussed below, the Court DENIES Plaintiff's motion and determines that the *de novo* standard of review applies to Plaintiff's case.

---

[1]  By the parties' stipulation, Plaintiff proceeds pseudonymously. (Dkt. 27.)

## II.    BACKGROUND[2]

### A.    The 2012 Plan

The Tribune Company ("Tribune") maintains the Tribune Company Group Welfare Benefits Plan (the "Plan") to provide health and welfare benefits to eligible employees.  (Dansart Decl., Ex. 1, at TRIBUNE00169.)  The 2012 Plan document (the "2012 Plan") provides that though the Plan is administered by Tribune, certain Participating Benefits are administered by an insurance company or other outside entity.  (*Id.* at TRIBUNE00170.)  It further states that documents and notices required to be filed with the Plan shall be given to the Plan Administrator in care of Tribune, unless the document or notice is required by a Participating Benefit that is administered by an insurance company or other outside entity.  For Participating Benefits administered by an insurance company or other outside entity, notices and documents shall be delivered to "the plan administrator listed in the Participating Benefit Documents incorporated by reference in the applicable Participating Benefit's Plan Supplement."  (*Id.*)

The 2012 Plan defines a "Plan Administrator" as the "Employee Benefits Committee or its designee as specified in the applicable Participating Benefit."  (*Id.* at TRIBUNE00178.)  It defines a "Claims Administrator" as "a person or persons, or entity or entities, appointed by the Plan Administrator to serve as the Claims Administrator for a given Participating Benefit."  (*Id.* at TRIBUNE00174.)  The 2012 Plan further provides that:

> Each Claims Administrator shall have the responsibility for review and payment of claims and recordkeeping related thereto and, *to the extent* directed by the Company and as set forth in the applicable Participating Benefit's documents listed and incorporated by reference in the applicable Plan Supplement, *may* have authority to exercise its discretion with respect to the *initial determination* of benefits under the Participating Benefit and *certain* appeals of denied benefit claims under such Participating Benefit. The Claims Administrator for each Participating Benefit and the Claims Administrator's responsibilities are set forth in the Participating Benefit's documents as listed and incorporated by reference in the applicable Plan Supplement.

(*Id.* at TRIBUNE00174–75) (emphasis added).

The 2012 Plan defines an "Appeals Fiduciary" as a person or entity "to whom the Plan

---

[2]  The Court here describes the proffered documents for clarity's sake without deciding which documents are properly before the Court.  The parties' dispute regarding which documents should be considered is addressed below..

Administrator has delegated the fiduciary duty and authority to exercise discretion in the review and resolution of any appeal of a denied claim." (*Id.* at TRIBUNE00173.) The 2012 Plan states that the "Appeals Fiduciaries for appealing a denied claim under each Participating Benefit are set forth in the Participating Benefit's participating documents as listed and incorporated by reference in the applicable Plan Supplement." (*Id.*)

In the "Claims Procedure" section, under item 6.2—Claims Procedure for ERISA Participating Benefits, the 2012 Plan states:

> The Plan Administrator has delegated claims and appeals responsibilities to Claims Administrators and Appeals Fiduciaries. The designated Claims Administrators and Appeals Fiduciaries are responsible for evaluating all claims and benefits under the Plan. . . . Benefits shall be paid under the Plan only if the Claims Administrators or Appeals Fiduciaries determine *in their discretion* that the claimant is entitled to them.

(*Id.* at TRIBUNE00189) (emphasis added).

In the "Administration of the Plan" section, the 2012 Plan states that the Plan Administrator and any representative that it designates pursuant to that section "shall have the discretionary authority to administer the Plan as specified herein." (*Id.* at TRIBUNE00211.) The document enumerates the Plan Administrator's powers and duties, which include, *inter alia*:

> (i) To construe and interpret the terms of the Plan and to determine all questions arising under the Plan, including the power to determine the rights or eligibility of Eligible Employees or Dependents under the Plan and Participating Benefits and the amount, manner, and timing of their benefits hereunder, and to remedy ambiguities, inconsistencies, and omissions.
>
> . . .
>
> (viii) To employ agents, attorneys, accountants, actuaries, or other persons and allocate or delegate them such powers, rights and duties as the Plan Administrator may consider necessary or desirable to properly carry out the administration of the Plan, provided that such allocation or delegation, and the acceptance thereof . . . shall be in writing.

(*Id.* at TRIBUNE00211–12.)

The Plan Administration section further provides that the Plan Administrator "may designate other organizations or persons . . . to carry out specific fiduciary or non-fiduciary responsibilities of the Plan Administrator" including but not limited to:

> (i) Pursuant to the terms of an administrative services agreement or claims administration agreement, the responsibility for administering and managing any part of the Plan, including the processing and payment of claims under

1    the Plan and recordkeeping related thereto;

2    . . .

3    (iii) The responsibility to review claims or claim denials under the Plan to
     the extent an insurer, Claims Administrator, or Appeals Fiduciary is not
4    empowered with such responsibility under the terms of the Plan or under the
     terms of any insurance policy or contract identified in the applicable Plan
5    Supplement.

6    (*Id.* at TRIBUNE00212.)

7         The 2012 Plan states that "[s]upplements are attached to and form a part of the Plan for

8    purposes of incorporating by reference the terms and provisions of the Participating Benefits."

9    (*Id.* at TRIBUNE00171.)  It also states that supplements may occasionally be added or modified.

10   (*Id.* at TRIBUNE00171–72.)  The 2012 Plan further states that:

11   A Participating Benefit, as identified in the applicable Plan Supplement, is
     documented by a Summary Plan Description ('SPD'), an insurance policy
12   and certificate of coverage, or membership booklet.  The documentation for
     each Participating Benefit is identified and incorporated by reference in the
13   Plan through Plan Supplements.

14   (TRIBUNE00171.)

15        In contrast to the documents that the 2012 Plan expressly incorporates, it provides that:

16   Agreements with third-party administrators for any self-insured coverage or
     for administrative services relating to enrollment or payment of benefit
17   claims are separate business agreements between the Company and the third
     party administrator and are not part of this Plan document or any underlying
18   Participating Benefit.

19   (*Id.* at TRIBUNE00187.)

20        The 2012 Plan includes Supplement A—Participating Medical Plan.  Supplement A's

21   stated purpose is to "incorporate by reference the terms and provisions of the documents

22   governing eligibility and benefits under the medical plan specified in paragraph A-6

23   ("Participating Medical Plan") made available to Eligible Employees."  (*Id.* at TRIBUNE00213.)

24   Supplement A expressly incorporates by reference the terms and provisions of certain

25   Participating Medical Plan documents, including the "Tribune Company Benefits Program SPD

26   Medical—Traditional PPO Plan Section, effective January 1, 2012, Group Number 912340,

27   including Attachments, as updated from time to time and any summaries of material

28   modifications thereto[.]" (*Id.* at TRIBUNE00214.)  Supplement A further provides that:

4

1
2
3
4
5

> The Plan Administrator or its delegate has the *discretionary authority* to determine eligibility and to interpret the Participating Medical Plan documentation incorporated by reference under this Supplement A.  In the event there is a conflict between the Plan document, this Supplement A, and the Participating Medical Plan documents incorporated herein by reference, unless otherwise specified, the terms of the Plan document shall control first, this Supplement A next, and the Participating Medical Plan documents last.

6

(*Id.* at TRIBUNE00215) (emphasis added).

7

### B.    The PPO SPD

8
9

The Benefit Program Summary Plan Description Medical—Traditional PPO Plan Section

10

(the "PPO SPD"), which was revised in January 2014,[3] states that the Traditional PPO option is

self-insured by Tribune. (Green Decl., Ex. D, at 5.)  It also states that defendant Blue Cross and

11

Blue Shield of Illinois ("BCBSIL") provides the PPO Plan's provider network and claims

12

administration.  (*Id.*)  The PPO SPD defines "Claims Administrator" as BCBSIL "and its

13

affiliates, who provide certain claims administration services for the Plan." (*Id.* at 37.)  In a

14

section detailing expenses that are not covered under the PPO Plan, the PPO SPD lists

15

"[e]xpenses for services and supplies which are not medically necessary, as determined by Blue

16

Cross Blue Shield." (*Id.* at 27.)

17

The PPO SPD advises participants that to receive benefits, either the participant or the

18

participant's care provider will need to submit a claim to the Claims Administrator. (*Id.* at 35.)

19

It also informs participants that they may appeal denied benefits and refers them to the "Claims

Review"[4] section of the "General Plan Information section."[5] (*Id.* at 36.)

20

### C.    The General Plan SPD

21

The Benefit Program Summary Plan Description—General Plan Information Section (the

22
23
24
25
26
27
28

[3]  Though both the 2013 and 2014 versions of both the PPO SPD and General Plan SPD are in evidence, the parties apparently agree that the 2014 versions are the proper versions to consider given that Plaintiff's claim was submitted and reviewed in 2014.  Regardless, according to Defendants the 2013 and 2014 SPDs do not materially differ.

[4]  The General Plan SPD does not contain a "Claims Review" section.  However, the General Plan SPD contains several sections which cover the topic of claims review. (*See* Green Decl., Ex. C, at 23–29.)

[5]  The PPO SPD's "Who Is Covered" and "When Coverage Begins" sections also refer readers to the General Plan Information section.  (Green Decl., Ex. D, at 7.)

1    "General Plan SPD") states that if there is a "conflict between the contents of this SPD and the

2    contents of the Plan, your rights shall be determined under the Plan and not this SPD."[6] (Green

3    Decl., Ex. C, at 5.) It also identifies BCBSIL as a private healthcare claims administrator that

4    "helps Tribune to administer claims under this Plan." (*Id.* at 4.)

5         In a section providing administrative information about the Plans, the General Plan SPD

6    describes the Plan Administrator as follows:

7         For the Tribune Company Benefit Program, the Tribune Company
          Employee Benefits Committee (the "Committee") shall be the Plan
8         Administrator for purposes of [ERISA] . . . and shall have the responsibility
          of administering the Plans and complying with any ERISA reporting and
9         disclosure laws[.] . . . The Company delegates to insurance companies or
          third party administrators issuing insurance contracts or acting as a claims
10        administrator under some of the Plans *the discretionary authority to make*
          *claims determinations* (including factual determinations and interpretations
11        of Plan terms) and, for some types of benefits, appeals determinations[.] . . .
          The Plan Administrator has delegated to an Appeals Committee the
12        discretionary authority to make appeals determinations in regard to issues of
          Plan eligibility[.] . . .
13
          The Committee as Plan Administrator shall have the sole authority in the
14        exercise of its discretion to interpret, apply and administer the terms of the
          Plans and to determine eligibility for benefits and the amount of any benefits
15        under the Plans, and its determination of any such matters shall be final and
          binding, *except to the extent such authority has been delegated* to an
16        insurance company or Appeals Committee. Benefits under the Plans will be
          paid only if the Plan Administrator, or an insurance company or Appeals
17        Committee to whom authority has been delegated, decides in its discretion
          that the applicant is entitled to them.
18
     (*Id.* at 39) (emphasis added).
19
20        The General Plan SPD informs participants that to obtain benefits, a claim must be filed

21   with the Claim Administrator and directs participants to send claims forms to BCBSIL's address.

22   (*Id.* at 23.) In the "Internal Claims Determinations and Appeal Process" section, the General

23   Plan SPD describes the process by which the Claim Administrator initially reviews claims. (*Id.*

24   at 24–26.) The General Plan SPD also informs participants that if their claim is denied, they

25   shall be provided in writing with, *inter alia*, "[a]n explanation of the Claims Administrator's

26   internal review/appeals and external review process[.]" (*Id.* at 25.)

27        In its definition of an "Adverse Benefit Determination," the General Plan SPD states:

28
_____

[6] The General Plan SPD was revised in March 2014. *See* (Green Decl., Ex. C.)

> If an ongoing course of treatment had been approved by the Claim Administrator or your Employer and the Claim Administrator or your Employer reduces or terminates such treatment . . . before the end of the approved treatment period that is also an Adverse Benefit Determination.

(*Id.* at 27.) The General Plan SPD further defines an "Adverse Determination" as a

> determination by the Claim Administrator or its designated utilization review organization that an admission, availability of care, continued stay, or other health care service that is a Covered Service has been reviewed, and based upon the information provided, does not meet the Claim Administrator's requirements for medical necessity . . . and the requested service or payment for the service is therefore denied, reduced, or terminated.

(*Id.*) The General Plan SPD defines a "Final Internal Adverse Benefit Determination" as an "Adverse Benefit Determination that has been upheld by the Claim Administrator or your Employer at the completion of the Claim Administrator's or Employer's internal review/appeal process." (*Id.* at 27.) It informs participants that they may call or write to the Claim Administrator to request a review of an adverse benefit determination. (*Id.* at 28.) It states that the "appeal will be conducted by individuals associated with the Claim Administrator and/or by external advisors[.]" (*Id.*) It also informs participants that before they can sue to recover benefits:

> the claimant must exhaust the appeal process and must raise all issues with respect to a claim and must file an appeal or appeals and the appeals must be finally decided by the Claim Administrator or your Employer.

(*Id.* at 28.) In describing the claim appeals procedures, the General Plan SPD informs participants that the Claim Administrator will notify them or their healthcare provider of its determination of the appeal. (*Id.* at 28–30.) The General Plan SPD also describes procedures by which participants may request of the Claim Administrator an external review by an independent review organization. (*Id.* at 30–34.)

## D.    The Administrative Services Agreement

Pursuant to the Court's March 12, 2015 Order, Defendants produced the Administrative Services Agreement ("ASA") between BCBSIL and Tribune. (Dkts. 79, 91.) The ASA identifies BCBSIL as the Claim Administrator. (Green Supp. Decl., Ex. H, at BCBSIL0000987.) The ASA provides that:

> The Employer retains *full and final authority* and responsibility for the Plan

7

1    and its operation. The Claim Administrator is empowered to act on behalf
2    of the Employer in connection with the Plan only as expressly stated in this
     Agreement or as mutually agreed to in writing by the parties.

3    (*Id.* at BCBSIL0000994) (emphasis added).

4         The ASA also establishes that in certain circumstances Tribune rather than BCBSIL will

5    review claims. The ASA states that while the BCBSIL will "receive eligibility information,

6    review and process Claims, and respond to customer inquiries," BCBSIL "does not have final

7    authority to determine Covered Persons' eligibility or to establish or construe the terms and

8    conditions of the Plan." (*Id.* at BCBSIL0000997–98.) Thus, in certain instances, BCBSIL "may

9    refer certain Claims to the Employer for review and final decision." (*Id.* at BCBSIL0000998.)

10   Such referrals shall be at BCBSIL's "sole discretion." (*Id.*)

11        In "Section 8: Final Determination of Claims/Inquiries," the ASA reiterates that "the

12   Employer retains the final authority and responsibility to establish and construe the terms of the

13   Plan and to determine Covered Persons' eligibility." (*Id.*) It then states that "[c]ertain claims

14   and/or inquiries will be referred to the Employer for final review and determination in the

15   following instances:"

16        a. When Claims for services do not appear to qualify for payment under the
          Plan, claims or inquiries where there is a question of eligibility, claims
17        where there is a question as to the amount of payment due, and claims
          involving litigation or the threat of litigation; and
18
          b. When a Covered Person chooses to appeal adverse determinations with
19        the Employer after exhaustion of all remedies offered by the Claim
          Administrator.
20
21   (*Id.*)

22        The ASA also provides that after exhausting all remedies by BCBSIL, a Plan participant

23   "may appeal all adverse determinations with the Employer. The Claim Administrator will

24   cooperate in providing Claim information[.]" (*Id.*) In the same section, the ASA states that "[o]n

25   occasion the Claim Administrator may deny all or part of submitted claims. The Claim

26   Administrator will provide a full and fair review of any determination of a Claim[.]" (*Id.*)

27        The ASA also clarifies that BCBSIL is not Tribune's, the Plan's, or the Plan

28   Administrator's fiduciary. It further states that:

          Although this agreement does not designate Claim Administrator as a

                                                  8

1
2
3
4

> fiduciary or otherwise delegate discretionary authority to Claim Administrator that would require fiduciary responsibility on the part the Claim Administrator, the parties acknowledge that a court of law or arbitrator could override such contractual provision with a final and binding ruling that the Claim Administrator took on additional responsibilities that confer functional status as a fiduciary.

5

(*Id.* at BCBSIL0001003.) Finally, the ASA states that BCBSIL's:

6
7
8

> responsibilities hereunder are intended to be limited to those of a contract claim rendering advice to and administering claims on behalf of the plan administrator[.] . . . As such, the Claim Administrator is intended to be a service provider but not a fiduciary with respect to the Employer's ERISA employee welfare benefit plan.

9

(*Id.*)

10
11
12

It is undisputed that BCBSIL, not Tribune or the Plan Administrator, initially determined Plaintiff's claim for inpatient treatment for bulimia nervosa and also decided his appeal of its adverse determination.[7]

13

## III.   LEGAL STANDARD

14
15
16
17
18
19
20
21
22
23
24
25
26

District courts reviewing denials of benefits under ERISA must apply one of two standards of review, depending on the language of the plan at issue. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). The default standard is *de novo* review. *Id.* at 115. If, however, the "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the decision to deny benefits and the interpretation of the plan are reviewed for abuse of discretion. *Id.* In order for a plan to alter the standard of review from de novo to abuse of discretion, "the plan must unambiguously provide discretion to the administrator." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir.2006) (en banc) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir.1999) (en banc)). Defendants bear the burden of proving that the Plan unambiguously confers discretion upon the administrator. *Ingram v. Martin Marietta Long Term Disability Income Plan for Salaried Employees of Transferred GE Operations*, 244 F.3d 1109, 1112 (9th Cir. 2001) (quoting *Kearney*, 175 F.3d at 1089). In general, for the abuse of discretion

27
28

---

[7] Defendants assert that BCBSIL conducted its initial determination and review with an independent review organization that it retained. Plaintiff apparently does not contest this assertion; nor is the issue relevant at this stage.

9

1    standard to apply, the administrator must actually exercise the discretion conferred upon it.

2    *Abatie*, 458 F.3d at 972 (citing *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income*

3    *Prot. Plan*, 349 F.3d 1098, 1106 (9th Cir. 2003)).

4        Even where the abuse of discretion standard applies, the Court may still examine the

5    Plan's decision under a somewhat more exacting lens.  In the Ninth Circuit, the abuse of

6    discretion standard is "tempered by skepticism" when the plan administrator has a conflict of

7    interest in deciding whether to deny benefits.  *Harlick v. Blue Shield of California*, 686 F.3d 699,

8    707 (9th Cir. 2012).  The existence of a conflict of interest is a factor in the abuse of discretion

9    review, and its weight varies with the severity of the conflict.  *Id.*  A conflict of interest arises

10   most frequently where "the same entity makes the coverage decisions and pays for the benefits."

11   *Id.*

12   **IV.    DISCUSSION**

13       The parties dispute which documents the Court may consider and whether those

14   documents unambiguously confer discretion upon BCBSIL.  The Court addresses each issue in

15   turn.

16       **A.    Which Documents May Be Considered**

17       In the Ninth Circuit, an ERISA plan may be comprised of multiple documents.  *Gunn v.*

18   *Reliance Standard Life Ins. Co.*, 399 F. App'x 147, 149 (9th Cir. 2010).  Moreover, there is no

19   requirement that the documents comprising the Plan be labeled as such.  *Horn v. Berdon, Inc.*

20   *Defined Ben. Pension Plan*, 938 F.2d 125, 127 (9th Cir. 1991).  The Supreme Court has made

21   clear that SPDs are summaries about the Plan and thus do not constitute the Plan's terms.

22   *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1877–78 (2011).  Extraneous documents, such as

23   SPDs, are not themselves part of the Plan.  *Oldoerp v. Wells Fargo & Co. Long Term Disability*

24   *Plan*, 500 F. App'x 575, 577 (9th Cir. 2012).  Notwithstanding *Amara*, courts have found that

25   SPDs and other documents may constitute Plan documents where they are incorporated by

26   reference.  *See Gonzales v. Unum Life Ins. Co. of Am.*, 861 F. Supp. 2d 1099, 1107 (S.D. Cal.

27   2012) (stating that a Plan may incorporate other formal or informal documents); *Langlois v.*

28   *Metro. Life Ins. Co.*, 833 F. Supp. 2d 1182, 1185 (N.D. Cal. 2011) (finding provision in SPD

1   enforceable where the SPD expressly provided that the company intended that the terms

2   described in the SPD be legally enforceable); *see also Mull v. Motion Picture Indus. Health Plan*,

3   51 F. Supp. 3d 910, 922 (C.D. Cal. 2014) ("Moreover, defendants have not alleged that the

4   Agreement and Declaration of Trust ('ADT') or any alleged formal Plan document purported to

5   incorporate the Summary Plan Description as part of the Plan itself (if that could even be a

6   coherent and legally valid incorporation).").

7          As a preliminary matter, the Court addresses Plaintiff's motion to strike the 2012 Plan

8   document because it was not timely produced.  Defendants submit a declaration from Tribune's

9   Director of Benefits Administration asserting that the 2012 Plan is the operative plan and has not

10  been amended. (Dansart Decl. in Supp. Defs.' Reply ¶ 4.) Defendants assert that the 2012 Plan

11  was produced on the first business day after Plaintiff informed them that he had not received that

12  document. (Dayton Decl. ¶¶ 2–9.) Additionally, Plaintiff submits an email chain between

13  Plaintiff's and Defendants' counsel. (Green Decl., Ex. G.) This email chain shows that when

14  Plaintiff informed Defendants that he intended to file a motion to strike the 2012 Plan,

15  Defendants' counsel offered to agree to modify the briefing schedule if Plaintiff was concerned

16  that he had not had sufficient time to consider the 2012 Plan Document. (*Id.*) Moreover, given

17  that Plaintiff's opening brief addresses whether the 2012 Plan unambiguously confers discretion

18  on BCBSIL, it does not appear that Plaintiff suffered any prejudice.  For the aforementioned

19  reasons the Court DENIES Plaintiff's motion to strike the 2012 Plan. (Dkt. 53.)

20         As discussed above, the 2012 Plan expressly incorporates by reference the PPO SPD.

21  The 2012 Plan incorporates by reference Supplement A, which expressly incorporates the PPO

22  SPD by name and in plain language. *See* (Dansart Decl., Ex. 1, at TRIBUNE00214.)

23  Nevertheless, Supplement A also states that:

24         In the event there is a conflict between the Plan document, this Supplement
           A, and the Participating Medical Plan documents incorporated herein by
25         reference, unless otherwise specified, the terms of the Plan document shall
           control first, this Supplement A next, and the Participating Medical Plan
26         documents last.

27  (*Id.* at TRIBUNE00215) (emphasis added). This internal reference suggests that the PPO SPD (a

28  Participating Medical Plan document) is something other than a "Plan document."  Moreover, as

                                               11

1   *Mull* recognizes, there is something inherently problematic about incorporating into the Plan a

2   document intended to summarize the Plan. Nevertheless, there is no conflict between the

3   relevant terms expressed in the 2012 Plan and the PPO SPD.[8] Thus, the PPO SPD is properly

4   considered as part of the Plan. *See Langlois*, 833 F. Supp. 2d at 1185–86 (construing SPD's

5   provision stating that the SPD's terms are intended to be enforceable to mean that the SPD's

6   terms are enforceable to the extent they don't conflict with the terms of the Plan itself and

7   therefore holding SPD sufficiently conferred discretion on the claim administrator).

8        A more troubling question is whether the General Plan SPD is part of the Plan. The

9   General Plan SPD is not expressly referenced in the 2012 Plan or its supplements. Additionally,

10  the fact that Supplement A lists specific documents constituting the controlling terms and

11  provisions of the participating Plans, but does not name the General Plan SPD, suggests that the

12  General Plan SPD is not incorporated into the Plan. While Supplement A expressly incorporates

13  attachments to the PPO SPD, there is no evidence that the General Plan SPD is an attachment to

14  the PPO SPD.

15       Moreover, the General Plan SPD states that if there is a "conflict between the contents of

16  this SPD and the contents of the Plan, your rights shall be determined under the Plan and not this

17  SPD." (Green Decl., Ex. C, at 5.) Additionally, under the heading "Plan Documents" it states

18  that:

19       The following Plans are participating plans in the Tribune Company Benefit
         Program. The complete provisions of the Plans are found in the official Plan
20       document, which rules in the case of any differences between it and this
         information.
21

22  (*Id.* at 42.) First, it is not clear what Plans are included in "the following Plans." Additionally,

23  this language strongly suggests that the General Plan SPD is not part of the Plan. Finally, while

24  the PPO SPD expressly refers readers to the General Plan SPD, it does not make clear that the

25  terms stated in the General Plan SPD are meant to be incorporated into the Plan documents or

26  meant to have legal effect. The Court therefore FINDS that the General Plan SPD is not

27  incorporated into the Plan and therefore is not itself a legally enforceable Plan document.

28  ───────────────
    [8]  Plaintiff conclusorily asserts that there is a conflict but fails to point to any specific provisions
    that conflict. The Court rejects this argument.

1    Nevertheless, as discussed below, even if the General Plan SPD is an official Plan document, it is
2    insufficient to unambiguously confer discretion upon BCBSIL.

3            Finally, the Court must decide whether to consider the ASA. Defendant asserts that the
4    ASA is not a Plan document and cannot be considered. Although the 2012 Plan anticipates that
5    the relationship between the Plan Administrator and the Claim Administrator will be evidenced
6    in writing, it expressly declares that agreements with third-party administrators are not part of the
7    Plan documents. Plaintiff does not argue that the ASA is incorporated by reference into the Plan.
8    Instead, Plaintiff argues that under *Amara*, the Court may consider the ASA to construe the
9    Plan's written language. However, Plaintiff fails to identify any language or omission in any
10   other proffered Plan document that should be clarified or construed in light of the ASA. *See US*
11   *Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1549 (2013) (stating that Courts construe ERISA
12   plans as they do other contracts and thus, because a Plan's language may leave gaps, "a court
13   must often 'look outside the plan's written language' to decide what an agreement means.").
14   Ironically, the only relevant terms in the 2012 Plan or SPDs that might be clarified by reference
15   to the ASA are the nature of the relationship between the Plan Administrator and BCBSIL and
16   the scope of discretion conferred. In other words, to find the ASA relevant to construe the Plan,
17   the Court would need to conclude that the Plan doesn't unambiguously confer discretion upon
18   BCBSIL. Regardless, as discussed below, the ASA's terms do not change the Court's conclusion
19   regarding the proper standard of review. The Court therefore assumes *arguendo* that the ASA is
20   cognizable not as a Plan document, but as a means of interpreting the written language of the
21   Plan Documents.

22           In sum, the Court FINDS that the Plan is comprised of the 2012 Plan and the PPO SPD.
23   The Court also assumes *arguendo* that these documents may be construed in light of the ASA.

24   **B.      Whether the Relevant Documents Unambiguously Confer Discretion Upon**
25   **        BCBSIL**

26        <u>1.</u>      <u>Legal Standard</u>

27           While the Ninth Circuit does not require use of the word "discretion," the Plan must
28   unambiguously confer discretion upon the administrator for the abuse of discretion standard to

apply. *Abatie*, 458 F.3d at 963. Although different circuits approach the standard of review differently, the Ninth Circuit prizes clarity. *Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1206-07 (9th Cir. 2000). "Neither the parties nor the courts should have to divine whether discretion is conferred." *Id.* at 1207. Additionally, merely authorizing a claims administrator to initially review claims is not enough. *See Ingram*, 244 F.3d at 1112–13 (holding that provisions stating that a carrier would make all decisions on claims and that carrier will conduct a "full and fair review" of claim denials were insufficient to confer discretion on the carrier). Thus, the Ninth Circuit has "held that ERISA plans are insufficient to confer discretionary authority on the administrator when they do not grant any power to construe the terms of the plan." *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1216 (9th Cir. 2007) (quoting *Abatie*, 458 F.3d at 964.) Therefore, unless "plan documents unambiguously say in sum or substance that the Plan Administrator or fiduciary has authority, power, or discretion to determine eligibility or to construe the terms of the Plan, the standard of review will be de novo." *Sandy*, at 222 F.3d at 1207.

### 2. Application

It is undisputed that BCBSIL, rather than Tribune, reviewed and denied Plaintiff's claim. Thus the relevant inquiry is whether the Plan unambiguously confers discretion upon BCBSIL. As the foregoing description of all of the proffered documents illustrates, there is no one provision simply stating that BCBSIL has the discretionary authority to make final and binding claims decisions and interpretations of the Plan. Instead, Defendants point to a labyrinth of different provisions spanning various documents which allegedly act in concert to confer discretion upon BCBSIL.

First, use of the word "discretion," without more, is not enough to establish that the abuse of discretion standard of abuse applies. *See Sandy*, 222 F.3d at 1207 (emphasizing the need for clarity and stating that "there is no magic to the words 'discretion or 'authority'). Next, the 2012 Plan states that a Claims Administrator "*may* have authority to exercise its discretion with respect to the *initial determination* of benefits under the Participating Benefit and *certain* appeals of denied benefit claims[.]" (Dansart Decl., Ex. 1, at TRIBUNE00174) (emphasis added). Such

language does not unambiguously confer discretion upon a Claims Administrator (or specifically on BCBSIL). At best, the remaining provisions in the 2012 Plan that are described above make clear that the Claims Administrator has discretion to make initial claims determinations. These provisions also state that the Plan Administrator has delegated appeals responsibilities to Appeals Fiduciaries. Thus, it appears that the Appeals Fiduciaries have the authority to review the Claims Administrator's determinations and thus authority to make final and binding decisions.

The PPO SPD clearly identifies BCBSIL as the Claims Administrator for the PPO Plan and indicates that claims should be submitted to BCBSIL. (Green Decl., Ex. D, at 5, 35–37.) The PPO SPD also indicates that BCBSIL will determine "[e]xpenses for services and supplies which are not medically necessary[.]" (*Id.* at 27.) The PPO SPD does not indicate the identity of the Appeals Fiduciary for that Plan. PPO SPD does not indicate that BCBSIL has discretion to interpret the terms of the Plan.

Even if the Court were to consider the General Plan SPD, this would still not suffice to unambiguously confer discretion upon BCBSIL. The most helpful provision to Defendants in that document states that:

> The Company delegates to insurance companies or third party administrators issuing insurance contracts or acting as claims administrators under *some of the Plans* the *discretionary authority* to make claims determinations (including factual determinations and *interpretations of Plan terms*) and, for some types of benefits, appeals determinations[.]

(Green Decl, Ex. C, at 39) (emphasis added). However, it then indicates that the Plan Administrator retains:

> sole authority in the exercise of its discretion to interpret, apply and administer the terms of the Plans and to determine eligibility for benefits and the amount of any benefits under the Plans, and its determination of any such matters shall be final and binding, *except to the extent such authority has been delegated* to an insurance company or Appeals Committee.

(*Id.*) (emphasis added). Taken together, these provisions establish that for *some* of the Plans, the Company delegates to claims administrators discretionary authority to interpret the Plan and that the Plan Administrator may have delegated to a third party the discretionary authority to make final and binding determinations regarding eligibility, the amount of benefits, and the Plans' interpretations. However, they do not establish that BCBSIL actually received such discretionary

15

1   authority with respect to the PPO Plan at issue. Nor do any other provisions in the SPDs or the

2   2012 Plan document so indicate.

3         Moreover, although the General Plan SPD indicates that the Claims Administrator will

4   conduct initially decide claims and conduct some appeals of claim denials it does not indicate

5   that the Claims Administrator will make final and binding determinations. Instead, in defining a

6   "Final Internal Adverse Benefit Determination," the General Plan SPD states that it is an adverse

7   benefit determination "that has been upheld by the Claim Administrator *or your Employer* at the

8   completion of the *Claims Administrator's or Employer's internal review/appeal process*." (*Id.* at

9   28) (emphasis added). This language does not unambiguously confer upon BCBSIL discretion to

10  make final and binding determinations or to interpret the plan. Moreover, all of the foregoing

11  ambiguity is exacerbated by the tenuous links between the PPO SPD, 2012 Plan, and the General

12  Plan SPD.

13        In sum, at most the 2012 Plan and PPO SPD confer discretion upon BCBSIL to make

14  initial benefit determinations. They do not unambiguously confer discretion upon BCBSIL to

15  interpret the terms of the Plan or to make final benefits determinations. Thus, Defendants fail to

16  carry their burden of establishing that the abuse of discretion standard of review applies. *See*

17  *Opeta*, 484 F.3d at 1216–17 (holding that *de novo* standard of review applied where the Plan did

18  not state that the administrator "has the full or sole discretion to interpret the terms of the Plan"

19  and where the Plan provided that the final eligibility decision was made by an independent

20  physician rather than by the administrator); *see also Johnson v. Georgia-Pac. Corp.*, 260 F.

21  App'x 994, 996 (9th Cir. 2007) (mem); *Viale v. Aetna Life Ins. Co.*, No. CV 11-00689 ODW

22  PJWX, 2011 WL 3736239, at *3–4 (C.D. Cal. Aug. 23, 2011) (finding that *de novo* standard of

23  review applied where the Plan granted the defendant authority to review denied claims but never

24  explicitly conferred upon the defendant authority to interpret the Plan's terms or to determine

25  claims' eligibility at the outset). This conclusion is true without resort to the ASA, and would be

26  reinforced if the Court were to construe the Plan documents in light of the ASA (which makes

27  clear that Tribune retains final authority to interpret the Plan's terms and to review BCBSIL's

28  claims determinations).

1  Defendants' reliance on *Madden v. ITT Long Term Disability Plan for Salaried*
2  *Employees*, 914 F.2d 1279 (9th Cir. 1990), is inapt. Admittedly, in *Madden* the Court found that
3  the abuse of discretion standard applied where the employer delegated authority to a claims
4  administrator via a claims administration agreement but retained for itself the ultimate discretion
5  to construe the Plan's terms. *Id.* at 1284–85. However, *Madden* was decided before *Kearney*, in
6  which the Ninth Circuit made more stringent the standard for showing that the abuse of
7  discretion standard applies. *See Sandy*, 222 F.2d at 1204 (stating that "in Kearney, [the Court]
8  tightened the reins" and made clear that including "*a* discretionary element" was not sufficient to
9  invoke the abuse of discretion standard; rather the Plan must unambiguously confer discretion).
10  Defendants' reliance on the Tenth Circuit's decision in *Geddes v. United Staffing Alliance*
11  *Employee Medical Plan*, 469 F.3d 919 (10th Cir. 2006), is similarly unhelpful. In *Geddes*, the
12  Court held that "[d]ecisions made by an independent, non-fiduciary third party at the behest of
13  the fiduciary plan administrator are entitled to *Firestone* deference because the third parties act
14  only as agents of the fiduciary." *Id.* at 927. However, unlike the Ninth Circuit, the Tenth Circuit
15  does not require that a plan must *unambiguously* confer discretion upon the administrator in
16  order to invoke the abuse of discretion standard. *Rodas v. Standard Ins. Co.*, No.
17  EDCV132203JGBSPX, 2015 WL 4477787, at *3 (C.D. Cal. July 10, 2015) (distinguishing
18  *Geddes* because, *inter alia*, the Ninth Circuit had not and likely would not endorse the Tenth
19  Circuit's approach given that the Ninth Circuit requires that a Plan *unambiguously* confer
20  discretion). Additionally, *Geddes* reached its holding in the context of addressing the separate
21  issue of whether delegating authority to a non-fiduciary precluded application of the abuse of
22  discretion standard. *See Geddes*, 469 F.3d at 924–27.
23  For the aforementioned reasons, the Court finds that Defendants fail to carry their burden
24  of showing that the standard of review should be altered from *de novo* to abuse of discretion.
25  The Court therefore HOLDS that the applicable standard of review in this case is *de novo*.[9]
26  ///
27
28  [9] In light of the foregoing, the Court need not address Plaintiff's argument that there is a conflict of interest.

**V.    ORDER**

1. For the aforementioned reasons, the Court HOLDS that the *de novo* standard of review applies to the case at bar.

2. For the aforementioned reasons, the Court DENIES Plaintiffs' motion to strike the 2012 Plan document.

**IT IS SO ORDERED.**

Dated:    October 7, 2015

STEPHEN V. WILSON
United States District Judge